UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDWARD V. RAY, JR.,

    Plaintiff,

  v.

A. LEAL, et al.,

    Defendants.

Case No. 11-cv-05550-YGR (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND ADDRESSING PLAINTIFF'S PENDING MOTIONS**

## INTRODUCTION

On October 26, 2011,[1] Plaintiff Edward V. Ray, Jr., a state prisoner currently incarcerated at La Palma Correctional Center in Eloy, Arizona, filed this *pro se* civil rights action under 42 U.S.C. § 1983, alleging constitutional violations that occurred in 2006 during the initial arrest of Plaintiff and his son, Edward V. Ray, III ("Ray III"), for multiple robbery charges. Plaintiff is seeking punitive damages.

Plaintiff alleges that Defendants Oakland Police Department ("OPD") Officers A. Leal, S. Francis and M. Ziebrath violated his Fourth Amendment right to be free from cruel and unusual punishment by using excessive force when they arrested him. The Court had initially issued an Order to Show Cause on March 20, 2012, requesting that Plaintiff address the apparent untimeliness of his complaint. Dkt. 6. Plaintiff filed his response on April 13, 2012. Dkt. 9. The Court considered Plaintiff's April 13, 2012 response, and summarized it as follows:

> Among other things, he argues that from November 2006 through July 2009, he filed "several types of various actions (e.g.) complaint forms with both Internal Affairs Dept. [and] Oakland Police

---

[1] Defendants state that Plaintiff's complaint was filed on November 17, 2011. Dkt. 36 at 7. Although the file-stamped date on Plaintiff's complaint is November 17, 2011, it was received at the Northern District Clerk's office on October 31, 2011. Dkt. 1-1 at 1. Plaintiff signed both his complaint and motion for leave to proceed *in forma pauperis* on October 26, 2011. Dkts. 1 at 5, 2 at 2. Plaintiff did not declare under penalty of perjury or include any evidence to affirmatively demonstrate that he submitted the complaint to jail authorities for mailing on that date, but the Court will assume that he did so. Therefore, the Court applies the "mailbox rule" to deem the complaint constructively filed on October 26, 2011, the date it was signed. *See Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (recognizing that the mailbox rule applies to the filing of a federal civil rights complaint).

> [Department] . . . ." (Pl.'s Response at 1.) Plaintiff claims that he also "filed two complaints with the Citizens' Police Review Board" and "a Government Tort Claim in Alameda County Superior Court." (*Id.* at 2.) However, he alleges his complaints "went unanswered." (*Id.*)

Dkt. 12 at 1-2. The Court then determined that Plaintiff's aforementioned statements led it to conclude that it could not *sua sponte* dismiss the complaint as time-barred, stating:

> Although the Court may still have doubts whether the complaint is timely, Plaintiff's statements in his response lead the Court to conclude that it cannot sua sponte dismiss the complaint as time-barred. Plaintiff might be able to avoid a statute of limitations bar to his complaint. This is not a determination that the complaint is timely but instead is only a determination that the Court is unable at this point to conclusively determine that the complaint is barred by the statute of limitations.

Dkt. 12 at 2. The Court then reviewed the complaint and found that it stated a cognizable claim against Defendants Leal, Francis, and Ziebrath for a Fourth Amendment violation. The Court ordered service of the aforementioned Defendants, and issued a briefing schedule.

Before the Court is Defendants' motion for summary judgment on the ground that the action is barred by the applicable statute of limitations. Dkt. 35. Plaintiff has filed his opposition, and Defendants have filed their reply. Dkt. 46, 51.

At the time the aforementioned motion was filed, Defendant Francis had not yet been served. Since then, he has been served. Defendant Francis has filed a "Joinder in Motion for Summary Judgment Filed by Defendants A. Leal and M. Ziebarth," which will be construed as a motion to join the other Defendants' motion for summary judgment. Dkt. 55. Defendant Francis's motion is GRANTED, and the joinder is accepted. Also before the Court are other pending motions by Plaintiff. Dkts. 41, 45, 54.

Having read and considered the papers submitted by the parties, the Court GRANTS Defendants' motion for summary judgment and addresses the other pending motions.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## BACKGROUND

### I. PLAINTIFF'S ARREST

The following facts related to Plaintiff's arrest are undisputed, unless specifically noted:

Plaintiff alleges that on August 27, 2006, at approximately 1:30 a.m., he was stopped by

OPD officers, including Defendants, after they chased him in his vehicle. Dkt. 1 at 3. Once officers were able to approach him, Defendant Francis opened the door to Plaintiff's car, pulled Plaintiff out of the car by his arm, and pushed him to the ground. *Id.* While Plaintiff was on the ground, Defendant Leal deployed his taser, firing two probes into the lower portion of Plaintiff's back from approximately two feet away. *Id.* Defendant Leal continued to issue additional electronic stimulation for approximately 15 seconds before turning the taser off. *Id.* He then issued three additional five-second stimulations, for a total of 30 seconds of stimulation. *Id.* at 4. Defendant Ziebrath then forcefully pressed a 12-gauge shotgun into Plaintiff's upper right forehead. *Id.* Plaintiff alleges that as a result of Defendants' actions, he urinated on himself, and suffered two broken ribs, multiple cuts and bruises, and a scratch above his right eye. *Id.*

Plaintiff was eventually convicted of several counts of robbery, and he was sentenced to a determinate term, i.e., less than for life, in state prison.

**II.     OPD INTERNAL AFFAIRS DIVISION ("IAD") COMPLAINT - AUGUST 27, 2006**

On August 27, 2006, shortly after Plaintiff's arrest, the OPD Criminal Investigation Division ("CID") interviewed Plaintiff regarding his allegations of excessive force. Sloten Decl. ¶ 5. Based on his allegations of excessive force during his arrest, CID initiated an IAD complaint and assigned it case number 06-0728. *Id.* The IAD officially opened the case on September 5, 2006. *Id.*

On March 29, 2007, after conducting an investigation, Lieutenant Sean Whent of the IAD sent a letter to Plaintiff indicating the investigative findings as to each of his allegations, as follows:

> Use of Physical Force: Grab/Push/Shove/Forcefully/Kick/Strike with gun - The investigation has determined that the act or acts complained of did not occur; therefore, a finding of "Unfounded" has been determined.
>
> Use of Physical Force: Taser - The investigation has determined that the act which provided the basis for the complaint occurred; however, the investigation revealed that the acts were justified, lawful and proper. A finding of "exonerated" has been determined.

Dkt. 46-2 at 10; Sloten Decl. ¶¶ 5-6. IAD did not receive any other complaints from Plaintiff related to allegations of excessive force during his arrest on August 27, 2006. Sloten Decl. ¶ 7.

3

### III. CITIZENS' POLICE REVIEW BOARD COMPLAINT - NOVEMBER 28, 2006

On November 28, 2006, Plaintiff filed a complaint with the Oakland Citizens' Police Review Board ("CPRB"). Dkt. 9 at 10-11, Ex. 2. This complaint was assigned case number 06-0728. *Id.* at 10. A few months later, on January 16, 2007, Ray III filed a complaint with the CPRB as well. *Id.* The CPRB assigned this complaint the same case number—06-0728—as Plaintiff's CPRB complaint, presumably because it involved the same incident on August 27, 2006. *Id.*

In Plaintiff's complaint, he named Defendants Leal, Francis, and Ziebrath as "involved personnel" and stated: (1) Defendant Francis "threw [him] to the ground; (2) Defendant Ziebarth "shoved a 12 ga[uge] shotgun to the side of [his] head[,] cutting it open"; and (3) Defendant Leal "tazed [him] before, during, and after [he] was handcuffed in all approx. 30 seconds." Dkt. 9 at 10. Again, Plaintiff claimed that he suffered "bruises, cuts, scrapes, [and] broken ribs." *Id.* Plaintiff requested that Defendants be "terminated." *Id.*

On July 19, 2007, CPRB Complaint Investigator Karen Tom issued a "Notice to Complainant of Proposed Dismissal." Dkt. 46-2 at 14. After conducting an investigation, she made the following recommendations that Plaintiff's and Ray III's claims were: (1) unfounded - as to whether an officer improperly threw Ray III to the ground; (2) unfounded - as to whether officers kicked Plaintiff while he was on the ground; (3) exonerated - as to whether an officer improperly used the taser four times on Plaintiff; and (4) exonerated - as to whether an officer caused injury to Plaintiff by placing a shotgun to the back of his head and neck area. *Id.* at 14-15. The proposed dismissal was set for hearing on July 26, 2007. *Id.* at 15. On that date, the CPRB approved the aforementioned findings as recommended by Complaint Investigator Tom, and dismissed Plaintiff's and Ray III's complaint. Dkt. 46-2 at 17.

Plaintiff claims that he did not have an opportunity to respond to the July 19, 2007 "Notice to Complainant of Proposed Dismissal" because he was in a "Reception Center" of the prison "wherein one only gets out of a locked cell to shower, or walk to chow, the other twenty-three (23) hours [the prison] is [on] lockdown, you have no way to write or respond to a notice such as this." Dkt. 46 at 7. Plaintiff also complains that he was unable to attend the July 26, 2007 hearing because he was "in custody appealing [his] case and [was] never transported to the hearing [and]

4

the letter sent to [him] asking if [he] oppose[d] this decision came post-hearing." Dkt. 46-2 at 46.

## IV. GOVERNMENT TORT CLAIM - DECEMBER 22, 2006

On December 22, 2006,[2] Plaintiff filed a Government Tort Claim, pursuant to California Government Code § 945 et al. Dkt. 46-2 at 33-35. In the claim form, Plaintiff repeated his allegations of excessive force from his August 27, 2006 arrest as follows: that Defendant Francis "threw [him] to the ground"; that Defendant Ziebarth "shoved a 12 ga[uge] Shotgun to the side of [his] head cutting it"; and that Defendant Leal "tazed [him] before, during, and after [he] was handcuffed . . . approx. 30 sec." *Id.* at 35. Plaintiff also generally indicated the same injuries suffered: "cuts, bruises, scrapes and broken ribs, also problems with [his] right eye, [and] problems with sight." *Id.*

Although Plaintiff has presented the Court with a copy of what appears to be a Government Tort Claim form and a proof of mailing, dkt. 46-2 at 33-35, the IAD apparently has no record of receiving such a claim. Sloten Decl. ¶ 8. In addition, there is no decision as to this claim in the record.

## V. SECOND CPRB COMPLAINT - JULY 1, 2009

On April 21, 2009, Plaintiff sent a letter to CPRB Director Joyce M. Hicks explaining that he had been in custody and was not able to attend the July 26, 2007 hearing relating to his first complaint with the CPRB, and requesting that she "re-consider [his] case using evidence which will show your board this case does have merit." Dkt. 46-2 at 46. Plaintiff has attached a "Verification" indicating that the letter to CPRB Director Hicks was mailed on April 21, 2009. *Id.* at 47. However, Defendants claim that no such letter was received by the CPRB. Caceres Decl. ¶ 9. Also, there is nothing in the record indicating that Plaintiff received a response to this letter.

On July 1, 2009, Plaintiff filed a second complaint with the CPRB. Dkt. 46-2 at 37-40. In his second complaint, Plaintiff alleged that his first complaint was "dismissed by IAD and CPRB because they never examined the evidence in [his] possession." *Id.* at 37. Plaintiff stated that he was "refiling and asking for [his] evidence to be included this time during the investigation." *Id.*

---

[2] Plaintiff has attached a proof of mailing of the Government Tort Claim form to OPD on December 22, 2006. Dkt. 46-2 at 33.

1  Plaintiff also attached two additional pages describing the events that took place just prior to and
2  during his arrest on August 27, 2006. *Id.* at 38-39.

3  Again, although Plaintiff has attached a copy of what appears to be a second complaint form filed with the CPRB and a "Declaration of Service By Mail," dkt. 9 at 37-40, the CPRB apparently did not receive this claim. Caceres Decl. ¶¶ 7, 8. No action was taken on this second CPRB complaint, and there is nothing in the record showing a decision was ever rendered.

Finally, Plaintiff claims that on July 15, 2009, he wrote a letter to Oakland Mayor Ron Dellums regarding the fact that his second CPRB complaint had been "ignored." Dkt. 46-2 at 77. Plaintiff requested that the mayor's office conduct "an investigation into [his] very serious complaints" relating to the use of excessive force during his August 27, 2006 arrest. *Id.* Plaintiff ended the letter requesting the mayor to "return to [Plaintiff] at least a letter of acknowledgement showing [the mayor] got this letter." *Id.* There is nothing in the record showing that the mayor responded to Plaintiff's record or that any further investigation was conducted by the mayor's office. Lastly, there is nothing in the record showing that Plaintiff pursued any further attempts to acquire a response from the mayor's office or from the CPRB about his second CPRB complaint.

## DISCUSSION

### I. LEGAL STANDARD

#### A. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). As noted, Plaintiff has filed an opposition to Defendants' motion for summary judgment; however, the opposition is not verified and will not be considered to the extent it recites disputed facts because it was not signed under "penalty of perjury." Dkt. 46. However, because the original complaint as well as Plaintiff's declaration in support of his opposition are verified, dkts. 1 at 5, 46-1 at 5, the Court will construe them as opposing affidavits under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

### B.  Statute of Limitations Generally

Section 1983 does not contain its own limitations period. The appropriate period is that of the forum state's statute of limitations for personal injury torts. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985), *partially superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-78 (2004). In California, the general residual statute of limitations for personal injury actions is the two-year period set forth at California Civil Procedure Code § 335.1 and is the

applicable statute in section 1983 actions. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). It is federal law, however, that determines when a cause of action accrues and the statute of limitations begins to run in a section 1983 action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *See TwoRivers v. Lewis*, 174 F.3d 987, 991-92 (9th Cir. 1999).

A federal court must give effect to a state's tolling provisions. *See Hardin v. Straub*, 490 U.S. 536, 543-44 (1989); *Marks v. Parra*, 785 F.2d 1419, 1419-20 (9th Cir. 1986). California Civil Procedure Code § 352.1 recognizes imprisonment as a disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life." Cal. Civ. Proc. Code § 352.1(a). The tolling is not indefinite, however, the disability of imprisonment delays the accrual of the cause of action for a maximum of two years. *See id.* Tolling under section 352.1 is triggered by the plaintiff's arrest and incarceration. *See Elliott v. City of Union City*, 25 F.3d 800, 802-03 (9th Cir. 1994).

**C.     Analysis**

   **1.     Statutory Tolling Pursuant to California Code of Civil Procedure § 352.1**

Plaintiff's cause of action arose at the time of his arrest on August 27, 2006.[3] Under California Code of Civil Procedure § 352.1, the two-year statute of limitations applicable to Plaintiff's claims should be tolled for another two years because Plaintiff has been continuously incarcerated since his arrest on August 27, 2006. Cal. Civ. Proc. Code § 352.1(a). Further, the parties agree that Petitioner was sentenced to a term that is less than for life. Dkt. 36 at 10. Therefore, he is entitled to the benefit of statutory tolling as prescribed in section 352.1. *See Elliott*, 25 F.3d at 802-03.

After two years of statutory tolling for incarceration, the two-year statute of limitations on

---

[3] Plaintiff argues that he is entitled to a delayed accrual date of January 2008, when he "began to investigate the 'critical facts of his injury'." Dkt. 46 at 19. Such an argument is unavailing. The statute of limitations generally begins to run only once a plaintiff has knowledge of the "critical facts" of his injury, which are "that he has been hurt and who has inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122 (1979). After Plaintiff's arrest and the alleged use of excessive force by Defendants on August 27, 2006, Plaintiff knew or should have known about the circumstances and individuals involved, i.e., that he had been hurt due to the alleged use of excessive force by OPD officers, and, specifically, by the three named Defendants.

8

1    Plaintiff's claims began to run on August 27, 2008 and ended on August 27, 2010.  Despite the

2    fact that Plaintiff was allotted *four* years to file his excessive force claim relating to his arrest, he

3    failed to do so until October 26, 2011—almost a year and two months after the two-year statute of

4    limitations expired.  Plaintiff's excessive force claim against Defendants, therefore, is barred by

5    the statute of limitations unless Plaintiff can show that he is entitled to an extension of the

6    limitations period on equitable grounds below.

### 2. Extending Limitations Period on Equitable Grounds

There are two doctrines which may apply to extend the limitations period on equitable grounds—equitable tolling and equitable estoppel.  *Lukovsky v. San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008).  Equitable tolling focuses on "whether there was excusable delay by the plaintiff: 'If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.'"  *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002).  "Equitable estoppel, on the other hand, focuses primarily on actions taken by the defendant to prevent a plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'"  *Lukovsky*, 535 F.3d at 1051 (citing *Johnson*, 314 F.3d at 414).

Here, in his opposition, Plaintiff claims he should be entitled to equitable estoppel, dkt. 46 at 4-7, 18-20, and equitable tolling, *id.* at 8, 20-22.

#### a. Equitable Estoppel

In his opposition, Plaintiff argues that he is entitled to equitable estoppel because, while he knew of his cause-of-action, "[D]efendants' fraudulent concealment or misrepresentation deprived [him] of a full understanding of the true facts, and thus, dissuaded [him] from filing the claim at issue within the limitations period." *Id.* at 7 (citing *Estate of Amaro v. City of Oakland,* 653 F:3d 808, 813 (9th Cir. 2001).  Plaintiff makes this conclusory argument for equitable estoppel without any supporting evidence of Defendants' alleged fraudulent concealment or misrepresentation. Instead, as the Court understands it, Plaintiff claims that Defendants "fraudulently" concealed the nature of the alleged force used when he was arrested as well as his alleged injuries because they found that his claims were "unfounded" or that they were "exonerated" of any wrongdoing. Dkt.

9

46 at 4-7. In support of his argument, Plaintiff states:

> Every complaint mailed to the defendants and/or the [CPRB] was denied, even though both of those agencies had the evidence of Plaintiff's injuries in their possession, these records clearly show "cuts, scrapes, broken ribs and an eye injury," to support Plaintiff's claim that these defendants used excessive force against him.
>
> Instead, they said that it "never occurred" and/or "[was] justified" even though there isn't one police report that reads that Plaintiff did anything other than "passive[ly] resist," so why then was he beaten, kicked, hit with a gun and tased?

*Id.* at 19. The Court finds Plaintiff's arguments unavailing as it seems that he has misconstrued the doctrine of equitable estoppel and its applicability to his case. When estoppel is sought against the government, "there must be *affirmative* misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government." *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991) (emphasis added). There is no evidence that Defendants acted with *affirmative* misconduct by dismissing Plaintiff's complaints and finding his claims of excessive force to be unfounded. Accordingly, Plaintiff has not demonstrated that he relied on Defendants' misconduct in failing to file in a timely manner and thus he has not plead with particularity the facts which give rise to the claim of fraudulent concealment. Accordingly, Plaintiff is not entitled to equitable estoppel, and the Court will now consider Plaintiff's claim of an entitlement to equitable tolling.

### b. Equitable Tolling

As explained above, the record shows that Plaintiff filed multiple administrative filings relating to the excessive force incident at issue prior to filing the instant federal action, including his Government Tort Claim and his complaints filed with the OPD IAD and the CPRB. Specifically, Plaintiff argues that the statute of limitations should be equitably tolled for the period in which he sought relief by pursuing the aforementioned administrative filings. Dkt. 46 at 8, 20-22.

Under California law, equitable tolling "'reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'" *Cervantes v. City of San Diego*, 5 F.3d

1273, 1275 (9th Cir. 1993) (quoting *Addison v. State of California*, 21 Cal. 3d 313, 317 (1978)). Thus, in an appropriate case, the statute of limitations might be tolled for time spent pursuing a remedy in another forum before filing the claim in federal court. The California Supreme Court in *Lantzy v. Centex Homes*, explained the effect of equitable tolling on the statute of limitations:

> . . . the effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred.

31 Cal. 4th 363, 370-71 (2003), *as modified* (Aug. 27, 2003).

Defendants concede that, for the purposes of their motion for summary judgment, Plaintiff is entitled to equitable tolling based on his attempts to pursue his administrative filings outside of the courts. Dkt. 51 at 8-9. However, they argue that even if Plaintiff is provided the benefit of the entire time for which he claims equitable tolling applies, his excessive force claim remains time-barred. *Id.*

As mentioned above, the parties are in dispute as to whether Plaintiff's letters to CPRB Director Hicks and Mayor Dellums, the second CPRB complaint, or the Government Tort Claim form were successfully mailed by Plaintiff and received at the respective agencies. However, viewing the evidence in the light most favorable to Plaintiff, the Court assumes that all of Plaintiff's administrative filings were successfully filed with the respective agencies and that the aforementioned letters were mailed successfully. The Court now outlines Plaintiff's periods of pursuing administrative filings as well as his periods of non-action in the timeline below:

| | |
|---|---|
| 8/27/2006: | Accrual date. |
| 8/27/2006 - 7/26/2007: | Pursuing administrative filings for 333 days. |
| 7/27/2007 - 4/20/2009: | NO ACTION for 633 days. |
| 4/21/2009 - 7/15/2009: | Pursuing administrative filings for 85 days. |
| 7/16/2009 - 10/25/2011: | NO ACTION for 831 days. |
| 10/26/2011: | Constructive filing date of federal complaint. |

To further explain the timeline above, the Court now briefly summarizes Plaintiff's

administrative filings.

After Plaintiff was interviewed on August 27, 2006, the OPD CID initiated Plaintiff's IAD complaint, which was officially opened on September 5, 2006 and resolved in March 2007. Plaintiff's first CPRB complaint was submitted on November 28, 2006, and was eventually dismissed on July 26, 2007. Thus, the period from August 27, 2006 through July 26, 2007 provides Plaintiff with 333 days of equitable tolling. Within that time period, Plaintiff also filed a Government Tort Claim on December 22, 2006, although Defendants dispute this because such a claim was never received by OPD IAD. Sloten Decl. ¶ 8. Regardless, viewing the evidence in the light most favorable to Plaintiff for the purpose of resolving the instant motion for summary judgment, the Court assumes that the Government Tort Claim was filed.

After filing his first CPRB complaint, Plaintiff did not take additional action for almost 633 days. On April 21, 2009, Plaintiff submitted a letter to CPRB Director Hicks requesting reconsideration of his first CPRB complaint, and on July 1, 2009, he submitted his second CPRB complaint. In addition, on July 15, 2009, Plaintiff claims he wrote a letter to Mayor Dellums regarding the fact that his second CPRB complaint had been "ignored." Again, Defendants dispute that the letter to CPRB Director Hicks and the second CPRB complaint were received, and they further argue that Plaintiff never followed up on his second CPRB complaint. Caceres Decl. ¶¶ 7-9. However, again, for the purposes of resolving the instant motion for summary judgment, the Court views the evidence in the light most favorable to Plaintiff and assumes he successfully mailed the letters to CPRB Director Hicks and Mayor Dellums as well as the second CPRB complaint. Thus, for the period from April 21, 2009 through July 15, 2009, Plaintiff is entitled to an additional 85 days of equitable tolling, which is a total of 418 days (333 days plus 85 days) of equitable tolling.

After sending the July 15, 2009 letter to Mayor Dellums, Plaintiff took no action for an additional 831 days until October 26, 2001, when he constructively filed his complaint in this Court.[4] Therefore, even amidst pursuing his administrative filings, the record shows that Plaintiff

---

[4] Plaintiff argues in his opposition that he further diligently pursued legal remedies designed to lessen the extent of his injuries by "seeking assistance at the 1st chance he had . . . ."

12

arguably took no action, i.e., submits no evidence that he pursued any other administrative filings during this time, for a total of 1464 days (633 days plus 831 days).

As set forth above, Plaintiff can claim that he was attempting to lessen the extent of his injuries by pursuing remedies in other forums for a total of 418 days. In order to incorporate the effect of equitable tolling as explained by the California Supreme Court in *Lantzy*, 31 Cal. 4th at 370-71, this Court re-states its calculation relating to the statute of limitations deadline. *See supra* at 8-9. The Court has determined above that Plaintiff's cause of action accrued on August 27, 2006. *Id.* After two years of statutory tolling for incarceration, the two-year statute of limitations on Plaintiff's claims began to run on August 27, 2008 and ended on August 27, 2010. *Id.* Pursuant to *Lantzy*, no matter when it took place, the 418 days tolled interval is "tacked onto the end of the limitations period," thus extending Plaintiff's deadline for suit by the entire length of time during he was pursuing his administrative filings. *See id.* Thus, in accordance with *Lantzy*, the Court tacks on 418 days of equitable tolling after the August 27, 2010 deadline, and Plaintiff would have had until October 19, 2011 to file a timely federal complaint. Plaintiff did not constructively file his federal complaint until October 26, 2011—7 days after the statute of limitations ended. Thus, despite *liberally* granting him equitable tolling during the time he pursued his administrative filings, Plaintiff's complaint is still untimely by 7 days.

Moreover, Defendants argue that they will be prejudiced if the Court allows Plaintiff's complaint to proceed, stating:

> It has been nearly eight years since Ray was arrested. The likelihood of diminished memories and/or lost evidence is exceedingly high. *Addison*, 21 Cal. 3d at 317. Further, the purpose of statutes of limitations—to prevent the "assertion of demands which, through the unexcused lapse of time, have been rendered difficult or impossible to defend"—is completely frustrated if this lawsuit is allowed to go forward. *Addison*, 21 Cal. 3d at 317.

Dkt. 36 at 15. In their reply, Defendants counter Plaintiff's argument that they have failed to demonstrate any prejudice, stating:

---

Dkt. 46 at 26-29. Plaintiff has submitted several exhibits showing that he tried to obtain legal representation and attempted to obtain his medical records; however, the Court finds Plaintiff's argument unavailing because he fails to provide any supporting case law showing that the limitations period may be further tolled during such time periods.

> Ray argues that the OPD defendants have failed to demonstrate any prejudice if the instant lawsuit is filed more than five years after his arrest. This assertion is untrue and unsupported by evidence. Instead, a witness's memory is generally sharper when trying to recall an event contemporaneous with questioning. Further, the likelihood that an officer is still employed by OPD, a witness is physically available in California, or tangible evidence is intact and available is significantly greater. closer in time to an event occurring.

Dkt. 51 at 9 (citing *Addison*, 21 Cal. 3d at 317). This Court agrees with Defendants and finds that they are indeed prejudiced by Plaintiff's untimely complaint if they are forced to defend a claim that accrued eight years ago.

In sum, even after the Court found that Plaintiff is entitled to an additional 418 days of equitable tolling to account for all of his attempts to obtain relief outside of the courts, his complaint is still untimely by 7 days. Moreover, Defendants have demonstrated that prejudice would result from allowing this untimely complaint to proceed. Accordingly, Plaintiff's complaint— alleging his excessive force claim against Defendants—is DISMISSED with prejudice as time-barred, and Defendants' motion for summary judgment is GRANTED. Dkt. 35.

## PLAINTIFF'S PENDING MOTIONS

Plaintiff has filed a motion, entitled "Proof of Service Upon [Defendant] Francis; Request for Order of Court Setting Briefing Schedule and Motion to Compel Answer as to Defendant Francis Within Reasonable Amount of Time." Dkt. 41. Because Defendant Francis had already filed an answer prior to this motion being filed, the Court DENIES the motion as moot. Dkt. 41.

Plaintiff has also filed a "Second Motion for an Order to Compel Discovery" as well as a "Motion for Order Granting Additional Sanctions for Failure to Comply with Plaintiff's Discovery Requests." Dkts. 45, 54. Defendants have opposed both motions. Dkt. 56. Notably, in opposing the second motion to compel discovery, Defendants argue that "<u>not one of Plaintiff's document requests seeks any information that has any bearing on or is germane to a determination of the threshold issue before the Court: whether this action was filed within the applicable statute of limitations and/or tolling provisions</u>." Dkt. 56 at 3 (emphasis in original). Upon reviewing Plaintiff's discovery requests, the Court agrees with Defendants. Moreover, the Court has granted Defendants' motion for summary judgment above, upon finding that Plaintiff's excessive force

14

1  claim should be dismissed with prejudice as time-barred.  Therefore, the pending discovery
2  dispute, which relates to discovery requests pertaining to the *merits* of his excessive force claim, is
3  moot.  Accordingly, the Court DENIES Plaintiff's "Second Motion for an Order to Compel
4  Discovery" as moot.  Dkt. 45.  It follows then that the Court should also deny Plaintiff's request
5  for sanctions to be imposed on defense counsel for alleged discovery violations.  Aside from the
6  discovery disputes being moot, the Court notes that it has never made a finding that any discovery
7  violations occurred and thus defense counsel was never actually ordered to produce discovery.  In
8  addition, there is no evidence that in responding or failing to respond to any of Plaintiff's
9  discovery requests, defense counsel engaged in conduct that is in bad faith, vexatious, wanton, or
10  for oppressive reasons.  *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)
11  (Rule 37 sanctions are appropriate only where the discovery violation is due to willfulness, bad
12  faith, or fault of the party.).   Therefore, sanctions are inappropriate at this time.  Fed. R. Civ. P.
13  37(d)(3).  Accordingly, Plaintiff's "Motion for Order Granting Additional Sanctions for Failure to
14  Comply with Plaintiff's Discovery Requests" is DENIED as moot and unsupported.  Dkt. 54.

## CONCLUSION

For the reasons stated above, the Court orders as follows:

1.   Defendant Francis's motion to join the other Defendants' motion for summary judgment is GRANTED, and the joinder is accepted.  Dkt. 55.

2.   Plaintiff's complaint—alleging his excessive force claim against Defendants—is DISMISSED with prejudice as time-barred, and Defendants' motion for summary judgment is GRANTED.  Dkt. 35.

3.   Plaintiff's motion, entitled "Proof of Service Upon [Defendant] Francis; Request for Order of Court Setting Briefing Schedule and Motion to Compel Answer as to Defendant Francis Within Reasonable Amount of Time" is DENIED as moot.  Dkt. 41.

4.   Plaintiff's "Second Motion for an Order to Compel Discovery" is DENIED as moot.  Dkt. 45.

5.   Plaintiff's "Motion for Order Granting Additional Sanctions for Failure to Comply with Plaintiff's Discovery Requests" is DENIED as moot and unsupported.  Dkt. 54.

1  6. The Clerk of the Court shall enter judgment in favor of Defendants, terminate all pending motions, and close the file.

7. This Order terminates Docket Nos. 35, 41, 45, and 54.

IT IS SO ORDERED.

Dated: March 31, 2015

_____
YVONNE GONZALEZ ROGERS
United States District Judge